Matter of Y. SS. (E. SS.) (2022 NY Slip Op 07281)

Matter of Y. SS. (E. SS.)

2022 NY Slip Op 07281

Decided on December 22, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

534467
[*1]In the Matter of Y. SS., Alleged to be a Neglected Child. Tompkins County Department of Social Services, Respondent; E. SS., Appellant.

Calendar Date:November 14, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and McShan, JJ.

Christopher Hammond, Cooperstown, for appellant.
Tompkins County Department of Social Services, Ithaca (Arthur C. Stever of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Tompkins County (Scott A. Miller, J.), entered November 10, 2021, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent is the mother of eight children, including the subject child (born in 2013). The paternity of the subject child has never been legally established. In September 2020, petitioner commenced this proceeding pursuant to Family Ct Act article 10, alleging, among other things, neglect of the subject child by respondent based upon allegations that respondent was sexually abusing the subject child by photographing her in a sexually explicit manner, disseminating the photographs and allowing a friend to come to respondent's home and view the subject child naked. Family Court ordered the temporary removal of the subject child from respondent and placed the child in the care and custody of petitioner. In June 2021, following a fact-finding hearing, Family Court issued a decision finding the subject child to be a neglected child. A dispositional hearing was held, after which Family Court issued a dispositional order indicating that respondent has yet to achieve any insight that she engaged in any wrongful and neglectful behavior and ordering that the subject child remain in petitioner's custody. Respondent appeals.
Respondent contends that Family Court erred in finding that she neglected the subject child. "The case law makes clear that a child may be adjudicated to be neglected within the meaning of Family Ct Act § 1012 (f) (i) when a parent knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child and failed to act accordingly. Determining whether a parent exercised the requisite minimum degree of care is evaluated by asking whether, under the circumstances, a reasonable and prudent parent would have so acted. In this regard, a finding of neglect does not require actual injury or impairment, but only an imminent threat that such injury or impairment may result" (Matter of Lillian SS. [Brian SS.], 146 AD3d 1088, 1090-1091 [3d Dept 2017]) [internal quotation marks and citations omitted], lvs denied 29 NY3d 919, 29 NY3d 992 [2017]; see Matter of Joseph PP. [Kimberly QQ.], 172 AD3d 1478, 1480 [3d Dept 2019]; Matter of Jonathan Q. [James Q.], 166 AD3d 1417, 1418 [3d Dept 2018]).
The testimony and evidence at the hearing require little discussion. It was established that respondent had a friend with whom she sometimes performed sexual services for money. At some point, in text messages, the friend began asking for things involving the subject child. Respondent testified that she "knew he wanted something with my daughter, but he wasn't getting it." Despite her knowledge of the friend's sexual interest in the subject child, respondent continued her involvement with the friend over a span of a few months. On one occasion, respondent [*2]sent a naked photograph of the subject child to the friend. On another occasion, during a telephone call with the friend, respondent offered to perform oral sex on him while allowing him to look at the subject child naked while she slept. In text messages, respondent provided her address to the friend. Such willingness of respondent to involve the subject child in the performance of her sexual services for money put the subject child's physical, emotional and mental health in imminent danger (see Matter of Alexis TT. [Andrea VV.], 204 AD3d 1311, 1314 [3d Dept 2022]), and we cannot say that "a reasonable and prudent parent [would] have so acted . . . under the circumstances" (Nicholson v Scoppetta, 3 NY3d 357, 370 [2004]; see Matter of Annaleigh X. [Ashley Y.], 205 AD3d 1109, 1112 [3d Dept 2022]).Although respondent testified that she took the photograph to send to the child's doctor, Family Court found respondent's testimony incredible. We accord deference not only to this credibility assessment, but also to the court's factual determinations (see Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1149 [3d Dept 2022], lvs denied 38 NY3d 903 [2022]; Matter of Jaxxon WW. [Donald XX.], 200 AD3d 1522, 1523 [3d Dept 2021]). Accordingly, Family Court properly adjudicated the subject child to be neglected.
Respondent also argues that some of the conditions of Family Court's dispositional order are unconstitutional.[FN1] Specifically, respondent challenges the condition that she "maintain and provide documentation of legal income source(s) sufficient to support the child." Respondent has admitted to engaging in illegal prostitution and testified as to a desire to no longer earn money this way. It is unclear how this condition, which encourages her not to engage in prostitution as a means of income, violates her constitutional rights.[FN2] Respondent also challenges the condition that she "acknowledge and demonstrate an understanding of her role in the neglect of the subject child . . ., specifically how her prostitution and involvement of [the subject child] in that prostitution as sexual bait for a pedophile harmed [the subject child] and placed [her] at risk of further harm." Contrary to respondent's argument, this condition does not require her to admit to a finding of neglect, but rather that she recognize and understand how involving the subject child in her prostitution put the child at risk. Certainly, such demonstration of understanding would decrease the chance of such behavior recurring. Thus, we do not find that this condition implicates respondent's right to due process of law. Finally, respondent challenges the requirement that she "utilize day care services for [the subject child] through a licensed provider." Contrary to respondent's contention, this condition does not prohibit family or friends from babysitting the child, especially in light of the previous sentence of the dispositional order which states that, respondent "shall have all babysitters [*3]for [the subject child] approved by [petitioner] prior to utilizing them." Accordingly, inasmuch as the dispositional order reflects "a resolution consistent with the best interests of the [subject] child[] after consideration of all relevant facts and circumstances, and [is] supported by a sound and substantial basis in the record" (Matter of Hayley QQ. [Heather RR.], 176 AD3d 1343, 1346 [3d Dept 2019] [internal quotation marks and citation omitted]; see Matter of Brandon DD. [Jessica EE.], 74 AD3d 1435, 1437 [3d Dept 2010]), we decline to modify any of the conditions therein.
Turning lastly to respondent's claim of ineffective assistance of counsel, she has failed to demonstrate the absence of strategy or legitimate explanations for counsel's alleged failure to object to the introduction of text messages of the friend and elicitation that the friend might be a pedophile (see Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1190 [3d Dept 2022]). Notably, it is clear that counsel's theory of the case was that respondent realized that the friend was a pedophile and that she was trying to gather evidence that would implicate him, going so far as recording a telephone conversation at her son's suggestion. Counsel also used the overall narrative between the friend and respondent to give respondent the opportunity to testify, multiple times, that she would not have ever allowed the friend to touch the subject child. Although this strategy was not successful, assuming that the friend's text messages are inadmissible hearsay, any error in this regard "was at most a mistaken judgment as to trial strategy and cannot be characterized as ineffective assistance of counsel" (People v Simms, 244 AD2d 920, 921 [4th Dept 1997] [internal quotation marks and citation omitted], lv denied 91 NY2d 897 [1998]; see Matter of Jeffrey VV. v Angela VV., 176 AD3d 1413, 1417 [3d Dept 2019]). "Considering the law, the evidence and the circumstances in their totality and as of the time of representation, we cannot conclude that respondent was deprived of meaningful representation" (Matter of Skylar DD., 183 AD3d 994, 996 [3d Dept 2020] [citations omitted]; see Matter of Brenden O., 20 AD3d 722, 723 [3d Dept 2005]). Respondent's remaining contentions, to the extent not specifically discussed herein, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Aarons and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Notably, respondent does not challenge the placement of the subject child in petitioner's care and custody.

Footnote 2: Although she argues that this condition prohibits her from earning money by odd jobs or cleaning houses, this is not reflected in the dispositional order. As long as the employment is not illegal and she can provide documentation of same, it appears she will have satisfied this condition.